Leonard C. DAVIDSON, Appellant,

v.

Alvie MOORE, Appellee.

Court of Appeals of Kentucky.

Nov. 11, 1960.

Terry L. Hatchett, Glasgow, for appellant.

Carroll M. Redford, Glasgow, for appellee.

MOREMEN, Judge.

Appellant Davidson sought damages for injuries to himself and to his farm tractor because of alleged negligence of appellee Moore. The jury returned a verdict for Moore and from the judgment entered on that verdict this appeal is prosecuted.

The accident happened on Kentucky Highway 90 about two miles east from Glasgow on an asphalt paved road which is about eighteen feet wide with shoulders of gravel on each side. At this point Hollow Road pierces Highway 90 from the north to form a T-shaped intersection. On the south side at the intersection is a drop of some fifteen feet over an embankment. The road curves slightly to the right as one approaches it from the west.

On August 18, 1958, a bright clear day, at about eight o'clock a. m., Davidson, a farmer who lived on Hollow Road, was driving his tractor east on Highway 90. At the same time appellee was approaching the intersection from the same direction, behind Davidson.

Davidson testified:

"I had my hand out for a left turn and a car come in back of me, and there was a double yellow line and he was passing me and instead of making a left turn I hit the brake to keep the car from running over the side of the tractor and the tractor went over the side of the bank."

Davidson was very vague about whether or not Moore's car touched his and in response to questions about it on several different occasions during the trial, qualified his answers with such words as "I think he bumped the left back wheel" or "I believe that he did." His testimony in this connection is so qualified that it is of little value.

Davidson stated that he began signaling for the left turn about twenty feet or twenty steps from the Hollow Road before he began his left turn. If we accept the military definition of step as being thirty inches, and since appellant estimated the distance at twenty steps, he began signaling about fifty feet before he reached the intersection.

Appellee Moore testified that he was driving east on Highway 90 and that he was some thirty or forty yards back of the tractor when it went off the road, that he did not cross the double yellow line, which indicates a no-passing zone, and that his car never came into contact with the tractor, that he was driving about thirty or thirty-five miles per hour, that he saw the tractor move a little to the left, then watched it suddenly spin or flip in the road

and run off the highway to the right and down the fifteen foot embankment into a field.

On this appeal it is urged that: (1) the trial court erred when it overruled the motion of appellant to discharge the jury after the jury returned from viewing the scene of the accident and (2) it was improper to give an instruction on contributory negligence.

After the jury returned from the scene of the accident counsel moved to discharge the jury and continue the case, and gave this reason:

"* * * part of the jury examined the scene of the accident before the rest of the jury arrived and while said part of the jury examined the scene in the absence of the rest, one of the members made motions or pointed at various parts of the landscape, the trees shown in the picture, the cross fence, and the intersecting road with a cane. After all of the jury had assembled in the presence of the Sheriff while all of the jury at that time were examining the scene, the said juror made pointing motions with his walking cane, then the jury separated and part of them went back to one of the cars while the rest of them continued to examine the scene."

Section KRS 29.301, formerly Section 318 of the Civil Code of Practice, reads:

"Whenever, in the opinion of the court, it is proper for the jury to have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent no person, other than the person so appointed, shall speak to them on any subject connected with the trial."

Appellant argues that the incidents at the scene of the accident were improper for two reasons: (1) The jurors should have had no conversation or communication among themselves about the case; and (2) the jurors were permitted to separate. While we do not concede that a jury must stand mute on such occasions, we are unable to determine from the record what happened at the scene of the accident except from the bare statement of counsel quoted above. Certainly if there was a communication, it was not shown that it was prejudicial. C.R. 61.01 provides that the court at every stage of the proceeding must disregard any error which does not affect the substantial rights of the parties. While this rule is primarily for the guidance of trial courts, this court, since the adoption of the new rules and before, Civil Code of Practice, § 756, has accepted it as a rule for guidance and will not reverse or modify a judgment except for error which prejudices the substantial rights of the complaining party. See Clay, C.R. 61.01, author's comment.

In Martin v. Tipton, Ky., 261 S.W.2d 809, the opinion was based on the theory that any happening while a jury is viewing the scene of an accident must be prejudicial to the substantial rights of the party complaining, before this court would reverse on account of it.

Under modern practice jurors are no longer considered "prisoners of the court" and separation is permitted upon proper admonition by the court. KRS 29.-302. Although we suppose the word, separation, might be properly applied to situations where one or more jurors are separated from their fellow jurors, still the word as used in the statute—and we believe generally—is definite in the sense that the dispersal applies to the entire jury and where they are permitted to go about their business until told to reconvene. In the case at bar there was no separation in the latter sense. While the jurors seem to have been conveyed in more than one automobile, still the jury was functioning

as an entity and there had been no separation in the true sense of the word. We find no prejudicial error in connection with the visitation.

█ It is next contended that no instruction concerning contributory negligence should have been given on the ground that if the testimony given by the appellant is believed, appellee at the time of the accident had crossed the double yellow line within one hundred feet of the intersection in plain violation of the law. This argument is predicated on the idea that appellant had given a proper signal for a left turn into Hollow Road and that he had also looked back to see whether the road was clear before he commenced his turn. It is suggested that since he was guilty of no negligence at all he could not have been guilty of contributory negligence.

Subsection (2) of KRS 189.380 provides:

"A signal of the intention to turn right or left shall be given continuously for not less than the last one hundred feet traveled by the vehicle before turning."

As pointed out above appellant testified that he had given the signal for a distance of about fifty feet. Appellee testified that he did not see or observe it. It was entirely possible that the jury might have believed that a proper signal was not given by appellant and that appellee also was negligent in attempting to pass near an intersection. We think under the circumstances the instruction was proper.

█ It seems to us that the record presents a strong case of negligence on the part of appellant alone because he seems to have lost control of his vehicle when he applied his brake and when testifying he refused to state absolutely that appellee's automobile made contact with the tractor. It is suggested that perhaps Chapter 189, which deals with traffic regulations and equipment of vehicles, excludes farm tractors from its definition of vehicles and therefore rules of traffic safety may not be applicable to them. We think however that it was the intention of the Act to exclude farm tractors from rigid requirements as to equipment but it did not intend that tractors could operate on public highways without regard to rules of safety, including the duty to give proper signals, et cetera.

█ Even if the Act had so intended, the operator of such a vehicle would not be relieved of all obligation to other users of the highway. Under the common law and under the custom developed over the years, which became a part of the common law, a signal is required before a change of direction may properly be made. The question of whether a proper signal was given addressed itself to the jury.

We are of opinion that the case was fairly tried and the judgment is therefore affirmed.